## GRADY *vs.* WARD.

Where the title to property purchased at a foreclosure sale was objected to, on the ground that the order of court authorizing the execution of the mortgage was void as against devisees, it was *held* that the title would be rendered good by the execution of a release by the devisees.

And the devisees being of age and consenting to release their interests, and the release having been ready before the hearing; it was *further held* that the purchaser was not excused from taking the title.

If the title of a mortgagor is good by adverse possession, that is such a title as a purchaser at a foreclosure sale is bound to take.

THIS was an appeal by Edward Cavanagh, the purchaser at a foreclosure sale, from an order made at a special term, directing him to complete his purchase. The mortgage foreclosed was executed, on the 19th of April, 1844, by John Power, sole surviving executor of Michael Smith deceased, in pursuance of an order made by the vice chancellor of the first circuit, on the 18th of April, 1844, upon the petition of said John Power. It was given to secure the payment of $1700 to

the plaintiff. The other facts are set forth in the opinion below, delivered at special term, by.

ROOSEVELT, J. "A motion is made in this complaint to compel the bidder at a foreclosure sale to complete his purchase. He objects on the alleged ground of insufficiency of title. Michael Smith, through whom it appears the title is derived, died many years ago, but after the revised statutes of 1830, leaving a will in which he left the property in question to three trustees of whom Dr. Power was the survivor, in trust to pay the net rents to his daughter, (Mrs. Ward,) and on her death to divide the property equally among her issue, each to receive his or her share at twenty-one, or marriage, and the rents in the meanwhile to be applied to his or her support. Mrs. Ward died after her father, leaving two infant children, named Ann and William. Ann came of age five or six years ago, and was then of course entitled to a conveyance of the one undivided half of the premises. Under the statute, however, no formal conveyance was necessary. The trust ceased as to her half, and with it the trustee's title, (§ 68 of the statute of trusts;) and by the 47th and 49th sections, the estate of the trustee was divested, and the beneficiary became immediately seised of the "legal estate," as well as entitled to the "beneficial interest." William's half, however, he being a minor still, remained in trust until November, 1854, when his minority terminated, and his legal estate commenced. From that period the two grandchildren of Smith, whether regarded as his sole heirs at law, or his sole beneficiaries by will, were the only persons having any interest, legal or equitable, in the property. Their release, therefore, assuming Smith's title to have been good, would cure all defects, if any, in the antecedent proceedings; and such a release, it appears, has been actually executed and tendered. But independently of the release, the statute in relation to mortgages, declares, that a chancery deed on a foreclosure shall be "an entire bar against each of them (the mortgagors and mortgagees) and against all parties to the suit." Now, the grandchildren were both parties to the suit in which the de-

Grady *v.* Ward.

cree of sale was made; and it is not pretended that there were any other parties in interest claiming under Smith. Whether the mortgage then executed by Power, as surviving trustee and executor, was duly authorized or not, and whether the order of the vice chancellor which allowed it to be given was valid or not, is immaterial. After the decree of foreclosure, the adult defendant was " barred" from raising the question ; and after a sale in good faith, under the decree, (especially a sale beneficial to his interests,) the infant was equally barred.

But the trustee, it is said, was not a party to the foreclosure suit, and he therefore could not be barred by the decree. He was not a party, because, being dead, he could not be. But the court, it is urged, the trust having by law devolved upon it, should have appointed a substitute. The court in effect did so ; it directed a sale and appointed a referee to conduct it, and a guardian *ad litem* to take care of the infant's rights. And even if any formal irregularities had taken place, and the minority still continued, the court, acting for the infant, and having in its character of guardian and trustee full power, would now remedy all such defects. But they are remedied already, and remedied effectually by majority and release.

Passing over all the niceties, a more fundamental objection—one on which the counsel for the purchaser lays the greatest stress—presents itself in the alleged want of title in Smith, or Smith's successor. Smith, it appears, purchased the property—then vacant ground—of William Bayard more than thirty years ago, and immediately entered into possession, and erected permanent buildings upon it. Bayard, it is clear, claimed to be and acted as owner ; and from the evidence, although not entirely complete for the whole period, it is obvious that the property had been assessed to him as owner, and that he paid the taxes on it, as owner, for fourteen years previous, showing an undisturbed possession for nearly half a century, during which, one set of parties did no act and made no claim, while the other, uncontradicted and undisturbed, did both. In such cases, the law is well settled that a deed, with its execution and loss, may and ought to be presumed. Even where a trust

existed, the court in *Jackson* v. *Brooks*, (8 *Wend.* 426,) presumed a conveyance after twenty-eight years. In *Jackson* v. *Miller*, (6 *Wend.* 228,) a partition, which is only a particular mode of conveyance, was presumed. In *Jackson* v. *McCall*, (10 *John.* 377,) a conveyance was presumed after the death of a party, and subsequent possession by his heirs for eighteen years. Such presumptions are indispensable to the quiet of titles and the peace of families. Absolute certainty is seldom attainable in human affairs; in titles to land, almost never. If thirty years' undisturbed possession under an absolute deed, and that preceded by fifteen more in the maker of that deed, with no claim or suspicion of claim elsewhere, be not sufficient to constitute a merchantable title, it would be difficult to find one, short of a patent from the state. And were the price in the present case as good as the title, the purchaser, I am inclined to think, would have viewed the matter in the same light. Besides, the purchaser has actually taken and retains possession. He has no right to say he holds as lessee, for his lease had expired, and unless in as purchaser, he would be in as trespasser—a position which no man is allowed by law to assume. He is therefore in the precise condition which renders a release appropriate, and makes it incumbent on him to accept that species of assurance. Having no doubt of the sufficiency of the title, I cannot do otherwise than grant the plaintiff's motion."

*Jas. W. White,* for the purchaser.

*R. B. Roosevelt,* for the plaintiff.

*By the Court,* MITCHELL, P. J. The purchaser in this case, objects that the title is not good. It may be that the order of the vice chancellor, authorizing the execution of the mortgage which was foreclosed, was void as against the devisees under the will, and yet the title would be good if those devisees would release. They are of age and consent to a release; and as there has been no unreasonable delay in proving the release, and it was ready before the hearing at the special

term, the purchaser is not excused from taking the title. (*Dutch Church in Garden street* v. *Mott*, 7 *Paige*, 85.) The title of the mortgagor is good by adverse possession. That is such a title as a purchaser is bound to take, even on a judicial sale.

Order of the special term affirmed, with costs.

[New York General Term, September 3, 1855. *Mitchell, Roosevelt* and *Morris*, Justices.]